That that lawsuit proceed. Thank you. All right. Thank you. Counsel the case just argued to be submitted and thank counsel for both sides for your helpful arguments in that case. All right, we'll proceed now to hear argument in the last case on calendar for argument this morning and that is 25 dash 410 voters Rights Association versus Craig Withee and we will hear first from Miss Gibson. Good morning, may it please the court Jule Gibson for plaintiff appellants. I would like to reserve four minutes for rebuttal. Appellants in this case alleged that the sport fish Restoration Act creates rights to recreational boating and that a state prohibition on certain types of recreational boating violates these rights. The state prohibition applies to a section of the Willamette River called the Newburgh pool. This is a 30 mile stretch of the river that has historically been a very popular place for people to ski inner tube wakeboard and wake surf. But in 2022, the Oregon Legislature passed a law prohibiting wake surfing and all toad water sports that occurred in a boat. Do you agree that your case stands or falls on the Buckley decision and on its continued Vitality? I do not your honor. I think the Buckley decision did find that the act at issue did unambiguously create a right but there were decisions after Buckley such as save our Valley which also found that the act created enforceable rights and this is what I save our Valley did not find that the act creates enforceable rights. I mean in your supplemental brief you presented it as if you described it as if the issue was presented in that case and decided a new for a second time, which is not in fact true. All it did was was described in the course of discussing the entirely different fact pattern. It summarized that case and then you know describe what the holding of it was. So you're you seem to be suggesting in your brief that it was a second reaffirmation and decision on the same point and that's not true. You're correct at the save our Valley case specifically looked at was the rights created by the act or by the regulation and the Ninth Circuit decided that it was the act that created the rights in the Ninth Circuit repeatedly cited to Gonzaga before holding that. And if you apply the Gonzaga test, which was later applied in Tlaib ski and in the Medina case, the act does create enforceable rights. Yeah, but in for example on page three of your brief you say in save our Valley the Ninth Circuit found for a second time found for a second time that the act creates enforceable rights and you said save our Valley stated quote the issue in Buckley was whether the Federal Aid and Sport Fish Restoration Act non its enabling regulations created an enforceable federal statutory right under section 1983. We hold that the act does confer rights enforceable under section 1983 that makes it sound like it's a holding of save our Valley because you omitted the quotation marks around that from Buckley in that quote. And so reading this brief a co-reader reading this brief thinks that save our Valley had the same issue and decided it again and that was not true. It was a different issue. I know you should not write a brief that way that suggests that we made a holding that in fact, we did not do. Your Honor. That was not my intention. Well, I'm just saying when you leave off quotes and you make it sound like we hold that is not an accurate representation of the holding of the case and it's not appreciated that you do that. Okay. Thank you, Your Honor. So why don't you explain why Medina doesn't overrule Buckley? I mean Buckley applies the Wilder test three-factor test in determining whether or not it's a right is unambiguously created. And then Medina comes along and says that courts have gotten confused by our decisions. They apply a three-factor test from Wilder. They should no longer do so. That sounds like Buckley is now no longer good law. Tell me why that's wrong. Even if Buckley is not Buckley was decided before Gonzaga. But in Medina, the Supreme Court stated that it was simply applying the same test that was applied in Gonzaga and then in Tlaib ski and this is De Novo review. So it's our argument that the sport fish Restoration Act does meet the Gonzaga requirement. Gonzaga test, but the Buckley decision I'm looking on page 191. It says to answer the initial question of whether the law in question unambiguously confers an enforceable right. We must still apply the three-part test set forth in Wilder by asking and then it'll limit it enumerates the three factors and then applies them. But then Medina says some lower court judges including in this case still consult Wilder right and blessing when asking whether a spending power statute creates an enforceable individual right. They should not that seems to me to just directly reject the holding of Buckley. And so unless you can explain how this statute meets the Medina test. Then I don't see how you can prevail. It meets the Medina test because it is phrased. Which I think is the Gonzaga test because the Supreme Court in Medina says we're simply applying the test that was in the Gonzaga and Tlaib ski. The act is phrased in terms of the person benefited and it contains language that is right creating individual centric and unmistakably focuses on the benefited class. The standards are met because there is an unmistakable focus on the benefited class. The act specifically refers to recreational boaters and it repeatedly refers to recreational boaters recreational boating recreational boats and recreational waters. What are the rights creating terms in the statute? Can you point me to them? Yes, there are I have identified five provisions. Which show that Congress repeatedly and unmistakably focused on the recreational boaters and their rights. One is 16 USC subsection 777 G subsection G1. That's the provision that requires States to conduct surveys to determine the adequacy of facilities that provide access to recreational waters for all sizes of recreational boats. The phrase all sizes of boats shows that the act is focused on individual rights not aggregate rights because it doesn't just say most boats are the most common size boats. But if there's one boat that's larger than all the others that boat also has to have access to waters another. I think the difficulty that I have with the argument is the Supreme Court in Medina told us that we're looking for specific language and the only example you have that works is Tlefsky. So I'm looking at this statute and trying to compare it to what the statute and Tlefsky look like and see how close of a match they are. It's undeniable. I think if you look at this statute that Congress had an objective of making rivers accessible to recreational boating, but I'm not clear how it is that the language that you're pointing to establishes that Congress intended to create an individual right of action. And that's the question that we're asking here. Well, the Tlefsky case was I think easy to find rights because the word rights was right in the provision, right? And that's the problem for you, right? Because the Supreme Court has told us that's the only example you have that where this worked, but the Supreme Court doesn't say that the word rights is required to find that the language is rights creating. It doesn't really say what is required to find rights creating, but it gives the test which include the unmistakable focus and that it's clear and unambiguous. Another provision which I think shows that it's rights creating is subsection. One moment. 777 G subsection G3. This is the provision that requires states to develop plans that ensure and that's the word used in the provision ensure that there is boat access adequate to meet the needs of recreational boaters on its waters. That sounds to me like an aggregate objective and not an individualized right. States are required to conduct surveys which are given to individual boaters and they ask the individual boaters. What are your access needs? And the word needs I believe shows that it is an individual focus because it's asking individual boaters and this provision in this provision. It shows that the state plans must ensure that those needs are met. The provision is phrased in the terms of the person benefited and there is an unmistakable focus on recreational boaters in that provision the language you just read what provision was that from it is 16 USC 777 G subsection G3 or G3. Okay. I thought you had said to all right.  Subsection to require states to conduct surveys and report those surveys to the federal government. So findings can be used to to be used in an assessment of recreational boat access needs and facilities again. There's that word needs which I think shows the individual focus because individuals will be surveyed and I think needs is rights creating because states just aren't required to spend money on boating facilities, but those facilities should meet the needs of the recreational boaters. And I see that I'm just got about three minutes left. So do you have further questions now? All right, you can reserve the rest of your time for rebuttal. All right. Thank you counsel. All right. We'll hear now from Mr. Whitehead. May it please the court counsel Carson Whitehead for defendants members of the Oregon Marine Board and I'd like to start with the court was just discussing Medina and I think it's this court's decision in Buckley is clearly irreconcilable with the court's analysis in Medina and that the case fails for that reason. Can't we affirm you without reaching that issue? I think that's right your honor and that's how then the original brief we did not ask the court to overrule Buckley because we don't think the court needed to and that I think before Medina there was a question. Was Medina filed before or after your brief was filed? It was after your honor. Yeah, sir. But what would you urge us to do from a jurisprudence standpoint reach that issue or not? At this point. I think the cleanest out is to say that Medina controls here and look at the terms of the act and say that that Buckley is just irreconcilable with Medina. So again, I don't think the court has to go to response to her argument that in fact does survive the Medina test because yes, maybe the particular analysis that was given in Buckley is wrong and we have to set that aside. It doesn't give us the right answer, but now there's a clarified test, but it's actually as she says, it's really just an elaboration of the pre-existing test and here, you know, when you use phrases like all boats and ensure those are things that are rights creating and it's not a magic words test. What's your response to that argument? Your honor. I think the the references to public access and to recreational boating are very general expressions of the congressional purpose behind the act, which was to provide funding to the states to provide public access. And I think this is the exact kind of language that Tlaib ski says is not enough that you need that kind of individual individually focused rights creating language. That's not just considering kind of an aggregate group or not considering a class of beneficiaries and that's all we have here. I mean the the key provision that that plain of sight is about the distribution of these funds. That's 7 7 GB 1 and that's the the clause that says, you know, a receiving state can use must use 15% of these funds to pay for not more than 75% of the costs of creating or improving public access to improve or to increase the suitability of of the nation's waterways for recreational boating. And so that's the sort of broad expression of congressional intent that I'm not aware of any case that supports a creation of an enforceable right under section 1983 after Medina and even even before then, you know, our position in the opening brief was that if you if you apply the Gonzaga test to this act, it's not enough. And even if you applied the test from from blessing, we didn't think that was enough. And now Medina's has clarified that blessing is no longer good law Gonzaga was the correct statement of the law and then Medina goes further and says really the only reliable yardstick we have is tell this key and and this statute is so different from the left ski that I don't see how the court could could find a way to say, well, this is the sort of individual rights creating language that the court has approved of. Just sort of staying within the the world in which the district court operated where it was just looking at Buckley and then whether this fell within the rights that were recognized in  I mean, it's Buckley says that there is this kind of, you know, right of access. Why isn't this kind of this isn't some, you know, obscure or unusual type of boating activity. This is a pretty typical type of boating activity. So why wouldn't this be in the heartland of the boating rights that are recognized in Buckley? Well, again, I mean, I think the the notion that if we accept the holding of Buckley that there is a right to access for specified recreational purposes, then, you know, I think that the district court was was correct there. If that is an actual, you know, the right an individual right that's created by by the act and that's where we would move to our merits argument of saying well, even if the statute does create a right to access the right of access is not violated by SV 1578 because plaintiffs can still access the water. Anyone can still access the water with with any boat. It's just the specific uses of those boats are restricted on the water and that's the sort of traditional. So the Buckley right of access for, you know, specified recreational activities gives the state plenary power to just reduce the specification to nothing. Well, I think so the the specific context of Buckley was about the again and Buckley really turned on the interpretive regulations that were in effect at the time that said that the state's receiving funds under this provision, you know, can't restrict access for power boats kind of a common horsepower and so the existing regulations overlaid that requirement and I think that was one of what we now see what's one of the methodological errors and Buckley was that it relied on those interpretive regulations in a way that I don't think the court can do any longer. And so the court was the court was looking at you a law that prohibited using jet skis, even if the if the jet ski has 50 horsepower, you can't use it, but you can use a power boat that has 50 horsepower. And so I think the court was really operating in that the framework of the claim being the the right was to access and there was a prohibition on kind of discriminating between boats in the manner that this law discriminated and we don't have that situation here. So if we're left with just the general right of access this this law, it prohibits wake surfing, which isn't a restriction on a type of boat. It's a specific activity you might use a boat for and it says if you have a boat and you're engaging in towed water sports that boat has to have a maximum loading capacity of less than 5,500 pounds. And so I think it's it's it's very different than the climate issue in Buckley and that notion of access it is the law simply doesn't restrict access with a boat of any weight. And so I think for those reasons, just even even if the court doesn't reconsider Buckley, we should still prevail and the district court was right to say there just hasn't been a violation of plaintiff's rights. I'm happy to answer any other questions that the court might have. I when I think of private right of action, I start with court versus ash, but that's just generally how it works. How we determine whether a private right of action is created. This is talking about spending power statutes and how they are analyzed. So from your perspective, what is the informing principle that would persuade us that we need to reach this first issue or just affirm on the on the other pieces, excuse me. You know, I think the state certainly has an interest in not facing more lawsuits like this and we have the the state receives, you know, I think between 8 and 10 million dollars a year under this act and uses, you know, a 50 percentage of those funding those funds and to the extent that that Buckley is hanging out there and says you might be able to bring a private suit and pull the members of the more Oregon Marine Board into court. I think we haven't we have an interest there. Would it also be true that maybe the states did not bargain for that when they agreed to accept the money? Certainly, your honor. And that's and so that principle for why Buckley is no longer good law under Medina and under the as distinct from just a case where you're looking at a pure private right of action from a non-spending law spending clause case. Yeah, this the idea that the state was put on notice that by taking this up spending, you know, this amount of money on facilities in the Newburgh pool that then we were subject to private private rights of action under section 1983 and that's just not supported by the text of the act. And as Medina says the spending a case where a spending clause statute will create a private right of action is going to be an extraordinary case a very rare case and this language. I don't think it's anywhere close to that. So again, I'm happy to answer any other questions. But if the court has none we ask that you affirm the district courts ruling. Thank you. All right. Thank you counsel. All right, we asked you a lot of questions. So I'm going to give you the four minutes you request. Thank you, Your Honor. I would also like to point out that the act does not contain any exceptions like the act did in Medina. Also, the act does not require just substantial compliance. Medina also considered the consequence of what would happen if the court found that a right did exist in the Medicaid Act and the court considered that that would likely mean all the other provisions of the Medicaid Act would also create rights and that would lead to it not being a typical which would be against the the rule that the court had enunciated. But in this case, I think the act is the atypical case because the act doesn't just contain in one provision that access needs to be provided to recreational boaters to recreational waters, but it states it in at least five provisions. The question I have for Medina, it's and it's the language of Medina that it doesn't quote from Gonzaga that it actually it adds. It says, you know, it has to clearly and unambiguously uses rights creating terms which it quotes from Gonzaga, but then it goes on to say in addition the statute must display and then it quotes Gonzaga saying an unmistakable focus, but then it says on individuals like the plaintiff. So it looks like the court is saying we now have to be applying an individual focus. But then that brings up Judge Forrest question, which is that this all looks very group class-based. There's no focus on individual rights as there is in the tabulesque era if I'm pronouncing that correctly case. So what's your response on that point? My response is the requirement that all boats need access shows an individual focus because it's every single boat every individual boat is must have access to recreational waters. Also the requirement for states to ensure that recreational let me get the exact language. States must have plans that ensure that there is boat access adequate to meet the needs of recreational boating. So to meet the needs I think is rights creating and that's very different than the provision that the Supreme Court looked at in Medina. It didn't look at the individual needs of people who were asserting the rights. And this would be the atypical case again in Medina. The court was concerned with the litigation that could come about if they found that the Medicaid Act created rights, but my research shows that this is the only case in the last 25 years where a plaintiff has sought to enforce their rights under the sport fish Restoration Act and the right that would be created would be very narrow first. The state would have to build boating facilities in US waters from monies from the act and then the state would need to prohibit recreational boating in those waters. And I think that that fact scenario is rare enough that that might be why this is the only case in the last 25 years to to enforce the rights under the act. So it would remain the atypical case. I think it's important that Congress does not Defined the phrase recreational boating. I think that that implies that they meant for the term to be given its general meaning. And as I stated in my opening brief, according to Justice Scalia when there's no definition general terms are to be given their general meaning and afforded their full and fair scope without being arbitrarily limited and here I feel like the state is trying to arbitrarily limit the definition of recreational boating. All right. Thank you counsel. Thank you. All right. The case just argued will be submitted and we will stand in recess. All rise.
judges: COLLINS, FORREST, Fitzwater